# United States Court of Appeals
# for the Federal Circuit

---

**STEVEN J. OLIVA,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2019-2059

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-00104-LKG, Judge Lydia Kay Griggsby.

---

Decided: June 15, 2020

---

HAN PARK, Covington & Burling LLP, Washington, DC, argued for plaintiff-appellant. Also represented by RICHARD L. RAINEY; JENNIFER CIELUCH, New York, NY.

DAVID PEHLKE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOSEPH H. HUNT, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.

---

Before NEWMAN, DYK, and WALLACH, *Circuit Judges.*

DYK, *Circuit Judge.*

Steven J. Oliva appeals a decision of the Court of Federal Claims ("Claims Court") dismissing his complaint for failure to state a plausible claim for breach of contract damages. We reverse and remand for further proceedings.

## BACKGROUND

Mr. Oliva periodically worked for the United States Department of Veterans Affairs ("VA") between 2000 and 2016. Starting in 2012, Mr. Oliva worked as an Associate Director of Pharmacy Customer Care at the Health Resource Center in Waco, Texas. On January 9, 2015, the VA issued a letter of reprimand to Mr. Oliva for accusing a supervisor of improperly pre-selecting an applicant for a position. Mr. Oliva filed a formal grievance challenging the letter of reprimand on the ground that his email constituted protected whistleblowing. On January 30, Mr. Oliva entered into an Equal Employment Opportunity settlement agreement ("the Settlement Agreement") with the VA to resolve his grievance. The Settlement Agreement stated that the VA would provide:

> [A] [w]ritten reference for Mr. Oliva and the assurance of a positive verbal reference, if requested[.] A written reference will be provided by [Mr. Oliva's supervisor]. Should [the supervisor] be asked to provide a verbal reference, he will not mention the retracted [r]eprimand [letter] and will limit information provided to that set forth in the written reference.

J.A. 96.

Mr. Oliva's amended complaint alleged that he "was wrongfully terminated from his employment with the [VA] in April 2016." J.A. 91. The parties appear to agree that his termination was for performance reasons.

On January 22, 2018, Mr. Oliva filed a pro se complaint in the Claims Court, alleging that the VA had breached the Settlement Agreement on two occasions.  The first alleged breach was in March 2015, when Mr. Oliva applied for a position as an Associate Director in the VA's medical center in El Paso, Texas.  According to the complaint, when the VA in Waco was contacted to provide a reference in support of his application, it disclosed the existence of the reprimand letter.  Mr. Oliva asserted that as a result, he did not receive an offer of employment at the El Paso position.  Mr. Oliva alleged that but for the breach, he would have been hired for the position.  The second alleged breach was in February 2016, when Mr. Oliva applied for a second position as a Healthcare Administrator in the VA's healthcare center in Greenville, North Carolina.  According to the complaint, a VA representative in Waco violated the Settlement Agreement by disclosing that Mr. Oliva was on a Temporary Duty Assignment, as well as the identity and contact information of his supervisor at the time.  Mr. Oliva stated that, as a result, he did not receive an offer of employment for the Greenville position.  Mr. Oliva's complaint again alleges that but for the alleged breach, he would have been hired for the Greenville position.  He also alleges that he would have received salary and a relocation incentive payment from the VA if he had been hired for either job.

The government moved to dismiss Mr. Oliva's complaint for failure to state a claim for breach of contract.  The Claims Court held that Mr. Oliva's complaint "plausibly alleged that the government breached the Settlement Agreement by disclosing his letter of reprimand—and the fact that plaintiff was on a temporary duty assignment—and that these alleged breaches resulted in the loss of future employment opportunities."  J.A. 80.  On the other hand, the Claims Court held that "the most generous reading of the complaint shows that [the] plaintiff has not stated a plausible claim to recover relocation incentive payments from the government."  *Id.*  The Claims Court referred Mr.

Oliva to a pro bono attorney to assist him in filing an amended complaint.

On September 26, 2018, Mr. Oliva, now represented by counsel, filed an amended complaint repeating the allegations of the first complaint and seeking (1) $289,564 in lost salary and (2) either $86,304 in lost relocation incentive pay with respect to the El Paso position or $87,312 in lost relocation incentive pay with respect to the Greenville position. The Claims Court dismissed the amended complaint, holding that Mr. Oliva had not stated plausible claims to recover lost salary or relocation incentive pay. On the issue of lost salary, the Claims Court held that Mr. Oliva had "allege[d] in the amended complaint that the VA breached the Settlement Agreement," but that "the factual allegations in the amended complaint show that the termination of [Mr. Oliva]'s employment in April 2016 [for performance reasons], rather than the VA's alleged breach of the Settlement Agreement in February 2016, was the proximate cause of [Mr. Oliva]'s lost salary." J.A. 11–12. On the issue of relocation incentive pay, the Claims Court held that Mr. Oliva had not alleged the prerequisite facts that would have made him eligible for such pay under the Office of Personnel Management ("OPM") regulations because he had alleged neither (1) that he had the required status— i.e., that he was a "federal employee" with "a 'Fully Successful,' or equivalent, rating of record immediately before he would have relocated"—nor (2) that "the VA determined the amount of relocation pay that he would have received." J.A. 9–11. Mr. Oliva appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).[1]

---

[1]    The Claims Court had jurisdiction over Mr. Oliva's breach of contract claim. *See* 28 U.S.C. § 1491(a)(1); *Holmes v. United States*, 657 F.3d 1303, 1312 (Fed. Cir. 2011); *Cunningham v. United States*, 748 F.3d 1172 (Fed. Cir. 2014).

DISCUSSION

The Claims Court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." Ct. Fed. Cl. R. 12(b)(6). We review the Claims Court's dismissal for failure to state a claim de novo. *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017). To survive a motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with "sufficient factual matter . . . to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We take all plausible factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party. *Jones*, 846 F.3d at 1351.

To recover for a breach of contract, "a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). "Contract remedies are designed to make the nonbreaching party whole." *Cal. Fed. Bank v. United States*, 395 F.3d 1263, 1267 (Fed. Cir. 2005). "One way to achieve that end is to give the non-breaching party 'expectancy damages,' i.e., the benefits the nonbreaching party expected to receive in the absence of a breach." *Id.* For expectancy damages, the party must "show that the claimed damages . . . would not have occurred but for the breach." *Fifth Third Bank v. United States*, 518 F.3d 1368, 1374 (Fed. Cir. 2008). But-for or proximate causation requires "that the causal connection between the breach and the loss . . . be definitively established." *Cal. Fed. Bank*, 395 F.3d at 1267–68 (internal quotation marks and citations omitted).

I

Mr. Oliva argues that the Claims Court erred when it held that Mr. Oliva had failed to state a plausible claim to recover lost salary based on a finding that "the termination of [Mr. Oliva]'s employment [for performance reasons] in April 2016," rather than the VA's alleged breaches of the Settlement Agreement was "the proximate cause of [Mr. Oliva]'s lost salary." J.A. 12. We agree with Mr. Oliva.

Mr. Oliva plausibly claimed that the alleged breaches were the cause of his lost salary. "'[D]amages for breach of contract require a showing of causation,' which in turn necessitates a 'comparison between the breach and non-breach worlds.'" *Vt. Yankee Nuclear Power Corp. v. Entergy Nuclear Vt. Yankee, LLC*, 683 F.3d 1330, 1349 (Fed. Cir. 2012) (quoting *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1273 (Fed. Cir. 2008)). With respect to the 2015 breach, the amended complaint alleged that "[a]s a result of the [VA]'s non-conforming reference [disclosing the existence of the reprimand letter], [Mr. Oliva] did not receive an offer of employment for the El Paso, Texas position." J.A. 88. Similarly, with respect to the 2016 breach, the amended complaint alleged that "[a]s a result of the [VA]'s non-conforming reference [disclosing that Mr. Oliva was on a Temporary Duty Assignment and the identity of Mr. Oliva's supervisor], [Mr. Oliva] did not receive an offer of employment for the Greenville, North Carolina position." J.A. 90. Here, the amended complaint pleaded a non-breach world in which Mr. Oliva would have been employed at either El Paso or Greenville and, therefore, would not have been terminated by the VA from his existing position. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (holding that the plaintiffs' had pleaded a substantively plausible claim when they "stated simply, concisely, and directly events that, [the plaintiffs] alleged, entitled them to damages"). We conclude that Mr. Oliva has alleged facts sufficient to support his lost salary claim.

We do not see how Mr. Oliva's termination in April
2016 from his Waco job undercuts the plausibility of these
allegations. "To analyze expectancy damages one looks at
what would have happened had the contract been per-
formed." *Stockton East Water District v. United States*, 761
F.3d 1344, 1352 (Fed. Cir. 2014) (internal quotation marks
and citation omitted).

The government argues that because "the amended
complaint dates the lost salary claim from the moment of
termination," Mr. Oliva has effectively claimed that "the
cause of the alleged lost salary was Mr. Oliva's termina-
tion, not the alleged breach[es]." Appellee's Br. 17. The
government's position is unpersuasive. As outlined above,
Mr. Oliva alleged that, had he been offered employment at
El Paso or Greenville, he would have left his employment
at Waco before he was terminated. J.A. 88, 90; *Energy Nw.
v. United States*, 641 F.3d 1300, 1305 (Fed. Cir. 2011) ("[A]
plaintiff seeking damages must submit a hypothetical
model establishing what its costs would have been in the
absence of breach." (citation omitted)). On a motion to dis-
miss, we are obligated to draw all reasonable inferences in
favor of Mr. Oliva and accept as true his plausible factual
allegation that he would have received an offer of employ-
ment at either El Paso or Greenville but for the alleged
breaches.[2] *See Amoco Oil Co. v. United States*, 234 F.3d
1374, 1376 (Fed. Cir. 2000) ("On a motion to dismiss for
failure state a claim, any factual allegations in the com-
plaint are assumed to be true and all inferences are drawn
in favor of the plaintiff."). There is no requirement that Mr.
Oliva "prove [his] case at the pleading stage." *In re Bill of
Lading Transmission & Processing Sys. Patent Litig.*, 681

---

[2]    There is no suggestion on the record here that the
reasons for Mr. Oliva's termination from the Waco position
would have led to termination from the El Paso or Green-
ville positions.

F.3d 1323, 1339 (Fed. Cir. 2012) (citing *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011)).

We conclude that the Claims Court erred when it held that Mr. Oliva had failed to state a plausible claim to recover for lost salary.

## II

Mr. Oliva argues that the Claims Court erred when it dismissed his claim for relocation incentive pay as an additional demand of damages. We agree with Mr. Oliva.

Mr. Oliva plausibly alleged entitlement to lost relocation incentive pay. As we noted in *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1354 (Fed. Cir. 2018), "there is no need to allege details of the damages calculation in the complaint." *See also In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 287 (3d Cir. 2018) (holding that "a plaintiff need not develop detailed economic models at the pleading stage" and only needs to allege facts "that, if proven true, would permit a factfinder to determine that []he suffered at least <u>some</u> economic injury"); 5A C. Wright & A. Miller, Federal Practice and Procedure § 1310 (4th ed.) (noting that "[g]eneral damages[, which] typically are those elements of injury that are proximate and foreseeable consequences of the defendant's conduct" and "can be alleged without particularity under Federal Rule of Civil Procedure 8(a)"); 24 Williston on Contracts § 64:16 (4th ed.) ("With respect to . . . [pleading] general damages, no allegation describing the elements of those damages ordinarily need be made.").[3]

---

[3]    There is no suggestion that Mr. Oliva's allegation of lost relocation incentive pay is a request for special damages, nor did the Claims Court invoke the heightened pleading standard for special damages under Court of Federal Claims Rule 9(g).

The Claims Court noted that although Mr. Oliva had "plausibly alleged that the VA determined that a relocation incentive would be provided for [the Greenville] position, [Mr. Oliva] fail[ed] to sufficiently allege facts in the amended complaint to show that he would have been eligible to receive this [relocation] pay." J.A. 9.

The government relies on OPM regulations providing that relocation pay is only available to "an employee who . . . [i]s an employee of the Federal Government immediately before the relocation." 5 C.F.R. § 575.205(a)(2). Furthermore, "[a] relocation incentive may be paid only when the employee's rating of record . . . for the position held immediately before the move is at least 'Fully Successful' or equivalent." *Id.* at § 575.205(c).

The Claims Court adopted this position and held that Mr. Oliva was required to allege the date "when he learned that the VA would not offer him the Greenville Position" and that "he was a federal employee" with a "Fully Successful, or equivalent, rating of record" "when he learned this information" because the OPM regulations state that the employee must have the requisite status for relocation "immediately before relocation." J.A. 10. Mr. Oliva's amended complaint stated that "[b]ut for the VA's breach of the Settlement Agreement, [he] would have received relocation incentive pay." J.A. 92.

The Claims Court also held that Mr. Oliva had alleged "no facts in the amended complaint to show that the VA determined the amount of relocation pay that he would have received to accept the Greenville Position." J.A. 11. The Claims Court held that Mr. Oliva's claim was also not supported because he had "not explain[ed] how he calculated the $87,312.00 in relocation incentive pay that he seeks in the amended complaint." J.A. 11. However, such detailed allegations as to the damages calculation were not required.

The amended complaint set forth sufficient factual allegations to plausibly claim that Mr. Oliva was entitled to receive relocation incentive pay. Accordingly, we conclude that the Claims Court erred when it dismissed his claim.

## III

We note that Mr. Oliva has also filed a complaint with the Merit Systems Protection Board ("Board"), which we address in a contemporaneously issued decision. *See Oliva v. Dep't of Veterans Affairs*, No. 19-1990. During oral argument, the government suggested that Mr. Oliva was attempting to obtain double recovery by simultaneously filing complaints before the Claims Court and the Board. "The purpose of damages for breach of contract is generally to put the wronged party in as good a position as he would have been had the contract been fully performed." *S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1332 (Fed. Cir. 2005). "[D]ouble recovery for the same injury is inappropriate" when the two causes of action arise from the "same operative facts." *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1328 (Fed. Cir. 2018) (alteration in original) (quoting *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017, 1019 (Fed. Cir. 2006)). Mr. Oliva admits that he cannot recover twice for the same injury. There is no possibility of double recovery because we hold in *Oliva*, No. 19-1990, that Mr. Oliva cannot recover on his Whistleblower Protection Act theory for damages for loss of the El Paso job.

## REVERSED AND REMANDED

### COSTS

Costs to appellant.